## Commonwealth v. San Martin

*James R. Whitman*, for appellant.
*Joseph M. Hill*, for Commonwealth.

GATES, P. J., May 8, 1967.—Eloy San Martin has appealed to this court from the action of the Secretary of Revenue suspending his driving privileges.

Since the facts in this case are not disputed, we prefer to relate this most interesting story in the narrative form.

In 1953, Eloy San Martin was in the United States Army and had just returned to this country from Korea. He was stationed at Fort Meade, Maryland. He was operating with an army driver's license. While on a weekend pass to his home here in Lebanon County, he had one too many drinks, hit a telephone pole, was charged with drunken driving and paid a fine in this county, was AWOL as a result, and was punished for that by the army. He did not have a Pennsylvania operator's license.

After returning to Fort Meade, Maryland, he was subsequently transferred to Fort Hood in Texas, where he remained until 1955, at which time he was honorably discharged from the service.

When he returned to Pennsylvania, he applied for an operator's license. On his application, he was asked whether or not his driver's license was ever suspended, and he answered, "No", because he did not have a license in Pennsylvania and he never had his operating privileges suspended anywhere. Neither he nor his wife received any notice from the State of Pennsylvania that his operating privileges were suspended. Nonetheless, according to the records of the Bureau of Motor Vehicles, his operating privileges were revoked on September 29, 1953, for operating under the influence in Lebanon County and proof of financial responsibility was required.

At any rate, as a result of his application in 1955, Eloy San Martin was licensed by the Commonwealth, and he has had his license and public liability insurance since that time.

On September 13, 1965, he was apprehended for going through a red traffic light in the City of Lebanon. At the time, he had in his possession and exhibited to the arresting officer an apparently valid Pennsylvania operator's license. He was subsequently charged with the violation, and he paid his fine and costs on October 16, 1965.

On May 21, 1966, an officer of the Pennsylvania State Police went to appellant's home and picked up his driver's license, at the same time telling him that he had made a false statement when he applied for his operator's license. Appellant told the officer that the statement was not false and that he never knew that his operating privileges were suspended and that he received no notice of the suspension. The trooper placed a charge against defendant for making a false statement in applying for his driver's license in Pennsylvania, but, after consulting with an assistant district attorney and the justice of the peace before whom the charges were filed, the charges were dropped.

Subsequently, he received a letter from the Bureau of Traffic Safety in Harrisburg telling him that he was charged with driving under the suspension going through the red light. He was advised to report to Reading, Pa. for a hearing. He again consulted the assistant district attorney, who told him to attend the hearing. At the hearing, Mr. San Martin explained everything to the examiner, who told him that while he could not restore his license, it would be sent to him from Harrisburg. The examiner recommended that there be no suspension, but only a letter of warning. The reviewing authority, however, overruled the hearing examiner and imposed a one year suspension. When Mr. San Martin received the notice, he again consulted with the assistant district attorney, who attempted to straighten out the matter in Harrisburg

but apparently was unsuccessful, and this appeal followed.

On appeal, we are not charged with reviewing the evidence taken before the Secretary, but we must hear the evidence anew and determine, in the exercise of the court's sound discretion and in the furtherance of justice, whether the license should be suspended: Commonwealth v. Emerick, 373 Pa. 388; Commonwealth v. Strobel, 375 Pa. 292; Munch License, 26 D. & C. 2d 791.

Thirteen years ago, a series of events were put into motion which clearly demonstrate the fallibility of red tape. We are aware of the great bulk of work handled daily by the Bureau of Motor Vehicles, and we cannot seriously charge them with being neglectful in this matter. Neither, however, can we charge this appellant with having done anything wrong, at least for which he has not already been amply punished. He first applied for a Pennsylvania operator's license after his discharge from the army in 1955. He did not know that his privileges to operate in Pennsylvania were suspended as a result of the violation in 1953. He received no notice of the suspension order, and it was quite natural for him to assume that his license could not be suspended, because he was never a licensed operator in Pennsylvania. The confusion of "license" and "privileges to operate" is rather widespread. At any rate, we cannot find that when he applied for Pennsylvania privileges in 1955 he consciously told an untruth. Apparently, the district attorney's office in Lebanon County, as well as the justice of the peace before whom charges were pending, came to that conclusion, and the charges were not pressed. Nor did the district attorney prosecute appellant for operating during suspension under this peculiar set of facts and circumstances, and we heartily endorse his action in that regard. In short, we be-

lieve that a great injustice would be done to this appellant if his privileges were again suspended under all of these facts and strange circumstances.

Therefore, after careful consideration, we will make the following

### ORDER

And now, to wit, May 8, 1967, the action of the Secretary of Revenue is reversed, and the Secretary of Revenue is directed to restore appellant's driving privileges.